UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIMOTHY S. MOHER,

      Plaintiff,

v.                                            Case No. 2:10-cv-57
                                              HON. R. ALLAN EDGAR

UNITED STATES OF AMERICA,

      Defendant.

_____/

**MEMORANDUM  AND  ORDER**

Plaintiff Timothy Moher ("Moher") owns 440 acres of land on Sugar Island in Chippewa

County, Michigan which he uses to harvest and sell timber.  Sugar Island is located on the St. Mary's

River which marks the international boundary between the United States of America and Canada.

Moher's land on Sugar Island is two miles from Canada.

This case arises out of the entry of two United States Customs and Border Protection (CBP)

patrol officers employed by the United States Department of Homeland Security onto Moher's land

on Sugar Island to patrol for illegal immigration activity pursuant to 8 U.S.C. § 1357(a)(3).  The

officers did not have a search warrant and did not have Moher's consent to search.  Plaintiff Moher

brings tort claims of trespass, assault, and battery against defendant United States pursuant to the

Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680, seeking to recover

compensatory damages and injunctive relief.

In addition to his tort claims under the FTCA, Moher demands a declaratory judgment under

28 U.S.C. § 2201.  Moher seeks a declaratory judgment that the border patrol officers violated 8

1

U.S.C. § 1357(e) by making a warrantless entry on his land without his consent. Moher wants the Court to declare that, in the absence of a search warrant or exigent circumstances, the defendant's employees are required by § 1357(e) to obtain Moher's consent to enter upon his land to patrol for illegal immigration activity. In the alternative, if the Court determines that the federal officers did not violate 8 U.S.C. § 1357(e) and are not required by § 1357(e) to obtain Moher's consent before entering upon his land on Sugar Island without a search warrant to patrol for illegal immigration activity, then Moher seeks a declaratory judgment that 8 U.S.C. § 1357(a)(3), as-applied to him, violates his right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches.

There are two motions before the Court. Defendant United States moves to dismiss the first amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). [Court Doc. No. 6]. Plaintiff Moher opposes the motion. [Court Doc. No. 11].

In the wake of the motion to dismiss, Moher moves for leave to file a second amended complaint under Fed. R. Civ. P. 15(a)(2). [Doc. No. 9]. Defendant opposes this motion arguing that the proposed second amended complaint is futile. [Court Doc. No. 12]. Defendant argues that all of Moher's claims should be dismissed under Rule 12(b)(1) and (6).

Magistrate Judge Timothy P. Greeley has submitted his report and recommendation. [Court Doc . No. 15]. It is recommended that the plaintiff's motion for leave to file a second amended complaint be granted. The Magistrate Judge further recommends that the defendant's motion to dismiss the amended complaint under Rule 12(b)(1) and (6) be granted in part as to any claim related to the entry by the border patrol officers onto Moher's land on Sugar Island, but denied as to Moher's claims that one officer used excessive force against Moher. In other words, it is recommended that Moher be allowed to proceed only on his assault and battery claims under the FTCA.

The parties raise objections to the report and recommendation. [Court Doc . Nos. 16, 17]. The Court has considered the objections and reviewed the entire record *de novo*. The Court agrees with the result recommended by the Magistrate Judge. The Court takes this opportunity to amplify and supplement the Magistrate Judge's report and recommendation with additional legal analysis which is necessary to rule on the pending motions and the objections to the report and recommendation.

## I.  Plaintiff's Motion for Leave to File Second Amended Complaint

Fed. R. Civ. P. 15(a)(2) provides that the Court should freely give leave to amend a pleading when justice so requires. A motion to amend a complaint under Rule 15(a)(2) may be denied if the proposed amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 613 (6th Cir. 2005); *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). A proposed amendment to a complaint is futile if it would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *Miller v. Calhoun County, Michigan*, 408 F.3d 803, 817 (6th Cir. 2005); *Matthews v. Jones*, 35 F.3d 1046, 1050 (6th Cir. 1994); *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Division*, 987 F.2d 376, 383 (6th Cir. 1993); *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980).

The Court concludes that Moher's proposed second amended complaint is not futile because Moher states viable assault and battery claims under the FTCA and Michigan law. The assault and battery claims brought under the FTCA survive the defendant's motion to dismiss under Rule 12(b)(1) and (6). The motion for leave to file a second amended complaint [Court Doc. No. 9] is **GRANTED** pursuant to Rule 15(a)(2). The Court considers the defendant's motion to dismiss [Court Doc . No. 6] as applying to the second amended complaint.

3

## II.    Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

The first and most fundamental question presented in every civil action brought in federal court is whether there is subject matter jurisdiction.  *Metro Hydroelectric Co., LLC v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008); *Caudill v. North American Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000); *Douglas v. E.G. Baldwin & Associates*, 150 F.3d 604, 606-07 (6th Cir. 1998).  The Court has an independent obligation to strictly police the boundaries of its subject matter jurisdiction to ensure that jurisdiction exists.  *Valinski v. Detroit Edison*, 197 Fed. Appx. 403, 405 (6th Cir. 2006); *Olden v. Lafarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004); *Douglas*, 150 F.3d at 607.  Fed. R. Civ. P. 12(h)(3) provides: "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."

Federal courts are courts of limited jurisdiction and may exercise only those powers authorized by the United States Constitution and federal statutes enacted by Congress.  It is presumed that a cause of action lies outside this limited jurisdiction.  Plaintiff Moher bears the burden of overcoming the presumption and demonstrating that this Court has subject matter jurisdiction over his claims.  *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994); *Metro Hydroelectric*, 541 F.3d at 610; *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001); *Douglas*, 150 F.3d at 606.  Moher has the burden of establishing subject matter jurisdiction in order to survive the defendant's Rule 12(b)(1) motion to dismiss.  *Giesse v. Secretary of Dept. of Health and Human Services*, 522 F.3d 697, 720 (6th Cir. 2008); *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).

There are two types of Rule 12(b)(1) motions: facial attacks and factual attacks.  *O'Bryan v. Holy See,* 556 F.3d 361, 375 (6th Cir. 2009); *Gentek Building Products, Inc. v. Steel Peel*

*Litigation Trust,* 491 F.3d 320, 330 (6th Cir. 2007); *RMI Titanium Co. v. Westinghouse Electric Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996); *Ohio National Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990). When a Rule 12(b)(1) motion attacks the plaintiff's claim of subject matter jurisdiction on its face, the facts are not in dispute and the allegations of fact in the complaint are generally considered as true. The plaintiff's burden to establish subject matter jurisdiction is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1248 (6th Cir. 1996). When there is a facial attack, the plaintiff can survive a Rule 12(b)(1) motion to dismiss by showing that the complaint alleges a claim cognizable under federal law and the claim is "substantial." A claim is substantial unless prior court decisions inescapably render it frivolous. *Metro Hydroelectric*, 541 F.3d at 610-11; *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.,* 287 F.3d 568, 573 (6th Cir. 2002); *Musson,* 89 F.3d at 1248; *Transcontinental Leasing, Inc. v. Michigan National Bank of Detroit,* 738 F.2d 163, 165 (6th Cir. 1984). A plaintiff can survive a facial attack by showing any arguable basis in the law for his claims. *Metro Hydroelectric*, 541 F.3d at 610-12; *Board of Trustees v. City of Painesville,* 200 F.3d 396, 398 (6th Cir. 1999); *Musson,* 89 F.3d at 1248; *Moore v. Ferrellgas, Inc.*, 533 F. Supp.2d 740, 744 (W.D. Mich. 2008).

When a Rule 12(b)(1) motion attacks the factual basis of the plaintiff's claim of subject matter jurisdiction, the allegations in the complaint are not presumed to be true. The Court may weigh the evidence and decide factual disputes when necessary to resolve factual challenges to subject matter jurisdiction. The Court has wide discretion to allow affidavits, documents outside the pleadings, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Gentek,* 491 F.3d at 330; *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007); *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Madison-Hughes*, 80 F.3d at 1130; *RMI Titanium,* 78 F.3d at 1134; *United States v. Ritchie,* 15 F.3d

592, 598 (6th Cir. 1994); *Ohio National Life*, 922 F.2d at 325.

Defendant United States attacks the factual basis of Moher's claim of subject matter jurisdiction. Defendant submits a sworn declaration under penalty of perjury from Assistant Border Patrol Agent-in-Charge Shawn Wilson ("Wilson") pursuant to 28 U.S.C. § 1746. [Court Doc. No. 7-1]. Moher also submits his sworn affidavit. [Court Doc. No.11-1]. In deciding the Rule 12(b)(1) motion to dismiss, the Court considers Wilson's sworn declaration and Moher's affidavit.

### B. Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. Rule 12(6)(b) permits a defendant to test whether a plaintiff is entitled to any relief as a matter of law, even if all well-pleaded allegations in the complaint are presumed to be true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993); *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). To survive the motion to dismiss under Rule 12(b)(6), the complaint must contain either direct or inferential allegations which comprise all of the essential elements necessary to sustain a claim for relief under some viable legal theory. *Eidson v. State of Tennessee Dept. of Children's Services*, 510 F.3d 631, 634 (6th Cir. 2007); *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336-37 (6th Cir. 2007); *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

Under Rule 12(b)(6) the second amended complaint is construed in the light most favorable to plaintiff Moher and the Court accepts all well-pleaded allegations of fact as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Scheur v. Rhodes*, 416 U.S. 232 (1974); *Eidson*, 510 F.3d at 634; *Commercial Money Center*, 508 F.3d at 336. When a factual allegation is capable of more than one reasonable inference, it must be construed in the plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997); *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th

Cir. 1995).  The Court may not grant a Rule 12(b)(6) motion simply because the Court does not

believe the factual allegations in the complaint.  *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400

(6th Cir. 1997); *Saglioccolo*, 112 F.3d at 228-29; *Columbia Natural Resources*, 58 F.3d at 1109.

The Court is not required to accept as true mere legal conclusions and unwarranted inferences

of fact.  *Commercial Money Center*, 508 F.3d at 336; *Gregory v. Shelby County*, 220 F.3d 433, 446

(6th Cir. 2000); *Columbia Natural Resources*, 58 F.3d at 1109.  The complaint must do more than

merely make conclusory allegations or recite bare legal conclusions masquerading as factual

allegations.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Center for Bio-Ethical

Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011); *Eidson*, 510 F.3d at 634; *Evans v.

Pearson Enterprises, Inc*., 434 F.3d 839, 847 (6th Cir. 2006).  To avoid dismissal under Rule

12(b)(6), the complaint must allege enough facts to state a claim for relief that is plausible on its

face, rather than just speculative or conceivable.  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937,

1949-50 (2009); *Bell Atlantic,* 550 U.S. at 570; *Center for Bio-Ethical Reform*, 648 F.3d 365, at 369;

*Gardner v. United States*, 443 Fed. Appx. 70, 83 (6th Cir. 2011).

## III.  **Plaintiff's Second Amended Complaint**

In his second amended complaint, Moher states that he invokes this Court's subject matter

jurisdiction under the FTCA, 28 U.S.C. §§ 2671-2680, and the Declaratory Judgement Act, 28

U.S.C. §§ 2201-2202.  The complaint avers the following.

Over the years Moher has built and maintained roads on his 440 acres of land on Sugar Island

to have access to timber that can be harvested and sold to lumber companies for income.  At two

access points to his land, Moher erected gates flanked by barbed wire fencing and posted "No

Trespassing" signs.

On September 28, 2008, Moher observed two DHS border patrol officers take down a portion

7

of a barbed wire fence and enter onto his land without a search warrant and without Moher's consent.[1]  Moher confronted the federal border patrol officers and requested that they exit his land. When they refused to leave, Moher used his cell telephone camera to take a picture of one of the officers.[2]  The officer yelled: "You're not going to take my picture."  The officer "gunned" the engine on his all-terrain motor vehicle (ATV) and drove it towards Moher.  Moher placed his hands down on the front of the ATV as it came into contact with him.  Moher jumped up to prevent the ATV from striking his lower body instead of merely striking his hands.  This is alleged to be an assault and battery.

Moher retreated or stepped back several feet away from the ATV and again attempted to use his cell telephone camera to take a picture of the border patrol officer.  The same officer is alleged to have again "maliciously" assaulted Moher with the ATV to prevent Moher from taking a picture. The Court infers that Moher is alleging the officer drove his ATV towards Moher a second time but the ATV did not make physical contact with Moher's body.  The second occasion when the border patrol officer drove the ATV towards Moher is alleged to be an assault but not a battery since there was no physical contact with any part of Moher's body.

The complaint further alleges that the border patrol officers trespassed on Moher's land and refused to comply with Moher's requests that they leave.  The officers said that they had the right and authority to enter onto Moher's land pursuant to 8 U.S.C. § 1357(a)(3) to patrol for illegal immigration activity, and they were acting in the course of their employment by the United States.

---

[1]  Defendant contends that the border patrol officers only removed a single strand of barbed wire loosely attached to a tree.  Plaintiff Moher does not allege that the border patrol officers caused any significant damage to his barbed wire fence.

[2]  In a brief, Moher asserts that he simply wanted to take the picture to document the presence of the border patrol officers on his land so that Moher could later file a complaint. [Court Doc. No. 11, p. 8].

8 U.S.C. § 1357(a) provides in part:

Powers without warrant

Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have the power without warrant --
...

(3) within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States.

The second amended complaint contains two counts. Count I concerns tort claims brought under the FTCA. In Count I, Moher claims that the actions of the border patrol officers were unreasonable, and the assault and battery were done in bad faith. Count I claims that the United States is liable for the torts committed by its employees including trespass, assault, and battery. Moher submitted an administrative claim to the federal agency (CBP) that employed the border patrol officers in compliance with the FTCA. The administrative claim was denied on September 17, 2009. Moher exhausted his administrative remedy under the FTCA.

Count II is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, not the FTCA. Count II does not plead any tort claims under the FTCA and Michigan state law. In Count II, Moher claims that the that the border patrol officers violated 8 U.S.C. § 1357(e) which provides:

Restriction on warrantless entry in case of outdoor agricultural operations

Notwithstanding any other provision of this section other than paragraph (3) of subsection (a) of this section, an officer or employee of the Service may not enter without the consent of the owner (or agent thereof) or a properly executed warrant onto the premises of a farm or other outdoor agricultural operation for the purpose of interrogating a person believed to

9

be an alien as to the person's right to be or to remain in the United States.

Moher avers that his income-producing timber land on Sugar Island is an "outdoor agricultural operation" under 8 U.S.C. § 1357(e) and this statute requires the border patrol officers to obtain Moher's consent before they make a warrantless entry onto his land to patrol for illegal immigration activity. In the alternative, if the Court finds that the border patrol officers did not violate § 1357(e), Moher claims that the warrantless search of his land on Sugar Island without his consent is an unreasonable search that violates the Fourth Amendment to the United States Constitution. It is claimed that 8 U.S.C. § 1357(a)(3), as applied to Moher, violates his Fourth Amendment right to be free from unreasonable searches. Finally, Count II avers that since the defendant's employees continue to assert that they have a right pursuant to 8 U.S.C. § 1357(a)(3) to patrol anytime on Moher's land on Sugar Island without a search warrant and without Moher's consent, there is an actual ongoing case and controversy to be adjudicated by this Court.

As the Court construes Count II, Moher does not plead that his as-applied Fourth Amendment unreasonable search claim challenging the constitutionality of 8 U.S.C. § 1357(a)(3) is brought under the FTCA. Rather, Moher in Count II seeks to use 28 U.S.C. § 2201 as an independent basis to invoke this Court's subject matter jurisdiction, separate and apart from the FTCA. In an effort to establish subject matter jurisdiction over Count II and obtain a declaratory judgment, Moher in his complaint relies exclusively on 28 U.S.C. § 2201.

The second amended complaint demands the following relief:

(1)      $5,100 in compensatory damages pursuant to the FTCA for the tortious conduct of the federal border patrol officers, i.e. trespass, assault, and battery under Michigan state tort law;

(2)      Declaratory judgment under 28 U.S.C. § 2201 that, absent exigent circumstances, the

10

> defendant's employees and agents (federal border patrol officers) are required by 8 U.S.C. § 1357(e) to obtain Moher's consent before making a warrantless entry onto his land on Sugar Island to patrol for illegal immigration activity;

(3)     Declaratory judgment under 28 U.S.C. § 2201 that 8 U.S.C. § 1357(a)(3), as applied to Moher and the warrantless entry by the federal border patrol agents onto his land on Sugar Island without Moher's consent, violates his right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches;

(4)     Injunction prohibiting the defendant's agents from further non-consensual entries (trespassing) on Moher's land on Sugar Island; and

(5)     Award of attorney fees and costs incurred by Moher in this civil action.

## IV.     Plaintiff Moher's Affidavit and Shawn Wilson's Declaration

In his affidavit [Court Doc. No.11-1], Moher states the following. He owns 440 acres of land located in the northeast corner of Sugar Island. Moher made improvements to the property by creating roads to provide easy access to the timber which can be commercially harvested. Since 2004, the land has produced a total of $101,400 in income for Moher derived from selling timber. Moher attaches to his affidavit copies of a timber sale contract dated June 7, 2004, and check stubs showing payments made to Moher by the Maples Sawmill, Inc. When harvesting the timber, the method used was select tree cutting, not clear-cutting. There remain a significant number of harvestable trees on Moher's land.

Defendant submits a sworn declaration under penalty of perjury from Shawn Wilson pursuant to 28 U.S.C. § 1746. [Court Doc. No. 7-1]. Wilson states the following. He is employed as an Assistant Border Patrol Agent-in-Charge with the DHS. At all times relevant to Moher's complaint, Wilson was the Acting Patrol Agent-in-Charge of the Border Patrol Station in Sault Saint Marie,

Michigan. Pursuant to his official duties, Wilson is familiar with Sugar Island and with illegal immigration activity that occurs on and near Sugar Island and the St. Mary's River.

Wilson states that Sugar Island is in the St. Mary's River, a waterway that marks the international boundary between the United States and Canada. Sugar Island is within 25 miles of the international border. Sugar Island is known for illegal immigration activity, including the illegal entry of aliens into the United States and drug trafficking. There are established trails on Sugar Island that lead directly to access points in Canada. Moher's land is located on the northern part of Sugar Island within one-half mile from the shoreline of the St. Mary's River and less than two miles from Canada. On September 28, 2008, DHS border patrol officers Will Young and Matthew Cain were assigned to patrol Sugar Island for illegal immigration activity.

## V.   Analysis of Count I: Tort Claims Under FTCA

### A.   Jurisdiction and Limited Waiver of Sovereign Immunity Under FTCA

The United States has sovereign immunity except to the extent that it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Premo v. United States,* 599 F.3d 540, 544 (6th Cir. 2010); *Sharp v. United States,* 401 F.3d 440, 442 (6th Cir. 2005); *Whittle v. United States,* 7 F.3d 1259, 1262 (6th Cir. 1993). A waiver of sovereign immunity must be unequivocally expressed in a federal statute and cannot be implied. The scope of a waiver of sovereign immunity is strictly construed in favor of the United States. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Certain Land Situated in the City of Detroit,* 361 F.3d 305, 307 (6th Cir. 2004). Absent an explicit and unequivocal waiver, sovereign immunity shields the United States from civil suits. *FDIC v. Meyers*, 510 U.S. 471, 475 (1994).

The existence of consent to be sued and a waiver of sovereign immunity by the United States is a prerequisite for the exercise of subject matter jurisdiction over claims brought against the United

States. *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Sherwood*, 312 U.S. at 586 (the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit). Sovereign immunity is jurisdictional in nature and deprives the courts of subject matter jurisdiction where applicable. *Meyer*, 510 U.S. at 475; *Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012); *Lovely v. United States,* 570 F.3d 778, 781-82 n. 2 (6th Cir. 2009); *Normandy Apartments, Ltd. v. United States Dept. of Housing and Urban Develepment,* 554 F.3d 1290, 1295 (10th Cir. 2009); *Robbins v. United States Bureau of Land Management,* 438 F.3d 1074, 1080 (10th Cir. 2006); *Sharp,* 401 F.3d at 443; *Certain Land Situated in the City of Detroit,* 361 F.3d at 307.

Plaintiff Moher's tort claims against the United States seeking to recover compensatory damages for trespass, assault, and battery are governed by the FTCA. The FTCA provides a limited waiver of sovereign immunity and subject matter jurisdiction for Moher to bring tort claims against the United States predicated on Michigan law. *Milligan,* 670 F.3d at 692; *Premo,* 599 F.3d at 544; *Sharp,* 401 F.3d at 442-43; *Chomic v. United States*, 377 F.3d 607, 609 (6th Cir. 2004). The FTCA waives the sovereign immunity of the United States from civil tort actions, with certain exceptions, and renders the United States liable for compensatory damages in tort where state law would impose liability against a private individual under like circumstances. *Richards v. United States*, 369 U.S. 1, 6 (1962); *Milligan,* 670 F.3d at 692; *Premo,* 599 F.3d at 544. The FTCA does not create causes of action against the United States nor does it provide a means for enforcing federal statutory duties. *Premo,* 599 F.3d at 544; *United States v. Cundiff,* 555 F.3d 200, 217 (6th Cir. 2009); *Myers v. United States*, 17 F.3d 890, 894 (6th Cir. 1994).

The FTCA waives sovereign immunity for tort claims against the United States for injury or loss of property, or personal injury, "caused by the negligent or wrongful act or omission on any employee of the Government while acting within the scope of his office or employment, under

circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). 28 U.S.C. § 2674 provides in part: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

The extent of the federal government's tort liability under the FTCA is determined in accordance with the law of the state where the event giving rise to liability occurred. Tort liability under the FTCA is usually determined by referencing the applicable state law. *Molzof v. United States*, 502 U.S. 301, 305 (1992); *Milligan*, 670 F.3d at 692; *Premo,* 599 F.3d at 545; *Brown v. United States*, 583 F.3d 916, 919-20 (6th Cir. 2009); *Young v. United States*, 71 F.3d 1238, 1241-42 (6th Cir. 1995); *Myers*, 17 F.3d at 894. Because the alleged torts committed by the federal border patrol officers occurred in Michigan, this Court must apply Michigan law under the FTCA.

The FTCA, as a limited grant of jurisdiction, excludes certain tort claims and remedies from its sovereign immunity waiver. In 28 U.S.C. § 2680, Congress specifies exceptions where sovereign immunity is not waived under the FTCA. If a tort claim falls within an exception in § 2680, the Court lacks subject matter jurisdiction under the FTCA and the claim must be dismissed. *Milligan*, 670 F.3d at 692; *Feyers v. United States,* 749 F.2d 1222, 1225 (6th Cir. 1984).

In plaintiff Moher's second amended complaint, the FTCA is the only proper source of subject matter jurisdiction identified where the United States has waived sovereign immunity. Moher is limited to bringing only tort claims against the United States which are allowed by the FTCA and predicated on substantive Michigan law.

**B.**     **Declaratory Judgment and Injunctive Relief Not Available Under FTCA**

Plaintiff Moher's demands for declaratory judgment and injunctive relief are not cognizable under the FTCA.  Any request by Moher for declaratory judgment and injunctive relief under the FTCA must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) on the ground of sovereign immunity and lack of subject matter jurisdiction.  The FTCA only makes the United States liable in compensatory damages for torts committed by its employees and agents.  The sole form of relief provided in the FTCA is compensatory damages.  28 U.S.C. §§ 1346(b)(1) and 2674.

The FTCA does not authorize this Court to issue declaratory judgments and injunctions against the United States.  The United States has not waived its sovereign immunity under the FTCA for such remedies.  To the extent that Moher seeks a remedy under the FTCA other than compensatory damages, there has not been a waiver of sovereign immunity and this Court lacks subject matter jurisdiction to award it.  *Harrison v. United States*, 329 Fed. Appx. 179, 181 (10th Cir. 2009); *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 863 (10th Cir. 2005); *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 651 (9th Cir. 1992); *Talbert v. United States*, 932 F.2d 1064, 1065-66 (4th Cir. 1991); *Birnbaum v. United States*, 588 F.2d 319, 335 (2nd Cir. 1978); *Moon v. Takisaki*, 501 F.2d 389, 390 (9th Cir. 1974); *Namer v. United States,* 2011 WL 3107819, * 1 (E.D. Ark. July 26, 2011); *Lucido v. Mueler,* 2009 WL 3190368, * 9 (E.D. Mich. Sept. 29, 2009), *aff'd*, 427 Fed. Appx. 497 (6th Cir. 2011); *Kaskaskia River/Marina Campgrounds, Inc. v. United States,* 2008 WL 4594979, * 2 (S.D. Ill. Oct. 15, 2008); *Ajaj v. United States,* 479 F. Supp.2d 501, 550 (D.S.C. 2007); *Rufu v. United States,* 876 F. Supp. 400, 406 (E.D. N.Y. 1994).

**C.**     **Trespass Claim**

Before addressing the relevant exceptions to the waiver of sovereign immunity provided in 28 U.S.C. § 2680, the Court must determine whether Moher's second amended complaint states

viable tort claims cognizable under Michigan law.  *Myers*, 17 F.3d at 898-99.  The Court concludes

that Moher's trespass claim under the FTCA must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

The second amended complaint fails to state a trespass claim under Michigan law upon which relief

can be granted.

Under Michigan law, a trespass is an unauthorized entry onto the private land of another.

*Amoco Pipeline Co. v. Herman Drainage Systems, Inc.,* 212 F. Supp.2d 710, 720 (W.D. Mich.

2002); *Giddings v. Rogalewski*, 158 N.W. 951, 953 (Mich. 1916); *American Transmission, Inc. v.

Channel 7 of Detroit, Inc.*, 609 N.W.2d 607, 613 (Mich. Ct. App. 2000); *Adams v. Cleveland-Cliffs

Iron Co.*, 602 N.W.2d 215, 219 (Mich. Ct. App. 1999); *Cloverleaf Car Co. v. Phillips Petroleum

Co.*, 540 N.W.2d 297, 302 (Mich. Ct. App. 1995).  Recovery for trespass to land in Michigan is

available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible

object onto land over which the plaintiff has a right of exclusive possession.  *Dickinson v.

Countrywide Home Loans, Inc.*, 2012 WL 163883, * 5 (W.D. Mich. Jan. 19, 2012); *Boylan v. Fifty

Eight Limited Liability Co.*, 808 N.W.2d 277, 286 (Mich. Ct. App. 2010); *Wiggins v. City of Burton*,

805 N.W.2d 517, 533 (Mich. Ct. App. 2011); *Adams*, 602 N.W.2d at 222.  If a defendant's intrusion

onto the plaintiff's private land is authorized by law, there is no trespass.

There must be an intent by the defendant to trespass.  The trespasser must intend to enter or

intrude on the plaintiff's land or real property without authorization to do so.  *Amoco Pipeline,* 212

F. Supp.2d at 720; *Droncheff v. Kerr*, 2011 WL 6268200, * 2 (Mich. Ct. App. Dec. 15, 2011);

*Bagley Acquisition Corp. v. Homrich Wrecking, Inc.*, 2009 WL 416850, * 4 (Mich. Ct. App. Feb.

19, 2009); *Terlecki v. Stewart*, 754 N.W.2d 899, 907 (Mich. Ct. App. 2008); *Helber v. City of Ann

Arbor*, 2004 WL 2389979, * 1 (Mich. Ct. App. Oct. 26, 2004); *Cloverleaf Car*, 540 N.W.2d at 302.

There are two reasons why Moher's second amended complaint fails to state a viable trespass

16

claim under Michigan law.  First, Moher cannot show that the border patrol officers made an unauthorized entry onto Moher's land.  Pursuant to 8 U.S.C. § 1357(a)(3) the border patrol officers were authorized to enter upon Moher's land on Sugar Island to patrol for illegal immigration activity without a search warrant and without Moher's consent.

Second, the face of Moher's complaint shows that there is a lack of intent to trespass.  Moher cannot establish that the border patrol officers acted with the requisite intent to enter and intrude upon Moher's land without any legal authorization to do so.  Moher's complaint avers that the officers cited 8 U.S.C.§ 1357(a)(3) as their proper authority to enter and patrol on Moher's land for illegal immigration activity.  The officers had an objectively reasonable and correct belief that they are authorized by § 1357(a)(3) to patrol on Moher's land on Sugar Island without a search warrant and without Moher's consent.  For these reasons, the trespass claim brought under the FTCA must be dismissed pursuant to Rule 12(b)(6).

### D.    Assault and Battery Claims

Under Michigan law, an assault is defined as an attempt to commit a battery or an unlawful act which places another person in reasonable apprehension of receiving an immediate battery.  *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011); *Binay v. Bettendorf,* 601 F.3d 640, 653 (6th Cir. 2010); *Grawey v. Drury,* 567 F.3d 302, 315 (6th Cir. 2009); *People v. Nickens*, 685 N.W.2d 657, 661 (Mich. 2004).  To recover civil damages for assault, a plaintiff must show an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact."  *Espinoza v. Thomas*, 472 N.W.2d 16, 21 (Mich. Ct. App. 1991) (citing *Tinkler v. Richter*, 295 N.W. 201, 203 (Mich. 1940)); *see also Thornton v. Fray*, 429 Fed. Appx. 504, 512 (6th Cir. 2011); *VanVorous v. Burmeister*, 687

17

N.W.2d 132, 142 (Mich. Ct. App. 2004).

Under Michigan law, a battery is defined as an unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person. *Bletz*, 641 F.3d at 757; *Binay,* 601 F.3d at 653; *Grawey,* 567 F.3d at 315. A battery is the willful or intentional touching of another person against that person's will. *Neal v. Miller,* 778 F. Supp.2d 378, 382 (W.D. Mich. 1991); *Tinkler*, 295 N.W. at 203. To recover damages for battery, a plaintiff must establish an intentional and harmful or offensive touching which results from an act intended by the defendant to cause such a contact. *Espinoza*, 472 N.W.2d at 21; *Tinkler*, 295 N.W. at 203); *VanVorous*, 687 N.W.2d at 142.

This Court concludes that Moher's second amended complaint states viable claims for assault and battery under Michigan law that survive the defendant's Rule 12(b)(6) motion to dismiss. The assault and battery claims cannot be dismissed under Rule 12(b)(6).

The United States argues that the assault and battery claims should be dismissed because the border patrol officers were authorized by 8 C.F.R. § 287.8(a)(1) to use non-deadly force and their conduct was objectively reasonable under the circumstances. 8 C.F.R. § 287.8(a)(1)(ii) provides that border patrol officers may use non-deadly force when they have "reasonable grounds to believe that such force is necessary." 8 C.F.R. § 287.8(a)(1)(iii) provides that border patrol officers "shall always use the minimum non-deadly force necessary to accomplish the officer's mission and shall escalate to a higher level of non-deadly force only when such higher level of force is warranted by the actions, apparent intentions, and apparent capabilities of the suspect, prisoner, or assailant."

There is no contention that Moher was a person suspected of illegal immigration activity, a prisoner, or an assailant. It is not alleged that Moher assaulted or threatened the federal border patrol officers with any harm. Rather, Moher merely made an oral request that the border patrol officers

18

exit his private land and Moher used his cellphone to take a picture of one of the officers.  Based on these facts and circumstances as alleged in the second amended complaint, Moher did not pose an imminent threat to cause any harm to the border patrol officers.

Defendant United States contends that Moher initiated the confrontation and interfered with the officers' ability to perform their duty to patrol for illegal immigration activity pursuant to 8 U.S.C. § 1357(a)(3).  Defendant asserts that the officers had reasonable grounds to believe that the force used against Moher was necessary to accomplish their mission.  It is further argued that the officers used the minimum degree of force necessary as authorized by 8 C.F.R. § 287.8(a)(1).

This argument fails.  In the report and recommendation, the Magistrate Judge correctly states: "As pleaded, it appears, at least arguably, that force was not necessary under the circumstances and the decision to use force against plaintiff was questionable when plaintiff was doing nothing more than photographing the officers who destroyed his property [by cutting the fence].  Therefore, the force used may not have been the 'minimum non-deadly border patrol officers force necessary to accomplish the officers' mission.'  8 C.F.R. § 287.8(a)(1)(iii)."  [Court Doc. No. 15, Report and Recommendation, p. 5].

The Court agrees with the Magistrate Judge on this point.  The Court reviews the defendant's motion to dismiss under Rule 12(b)(6) to determine whether the complaint states a claim upon which relief can be granted.  Defendant raises issues concerning: (1) whether the border patrol officers had reasonable grounds to believe that it was necessary to use force used against Moher to accomplish their mission to patrol Sugar Island for illegal immigration activity; and (2) whether the officers used the minimum amount of force necessary as authorized by 8 C.F.R. § 287.8(a)(1)(ii) and (iii).  These are disputed factual issues which cannot be decided on a Rule 12(b)(6) motion to dismiss.  These disputed issues may be decided either at trial or on summary judgment under Fed. R. Civ. P. 56, but

cannot be decided on a Rule 12(b)(6) motion to dismiss. Moher's second amended complaint sufficiently pleads assault and battery claims under Michigan law that survive the defendant's Rule 12(b)(6) motion to dismiss.

Next, defendant argues that the event alleged in the complaint, where the border patrol officer's ATV touched Moher's hands, is so insignificant that it hardly constitutes an assault and battery. Defendant asserts that Moher does not claim to have suffered any significant injury from the alleged assault and battery. It is argued that because the border patrol officers used *de minimis* force, their actions do not amount to an actionable assault and battery under Michigan law. Defendant cites *Leary v. Livingston City*, 528 F.3d 438, 445 (6th Cir. 2008) for the proposition that to be classified as *de minimis*, the use of force must neither hurt nor threaten the individual.

This argument is not persuasive. The defendant's reliance on *Leary* is misplaced. *Leary* is distinguishable from the present case. The Sixth Circuit's opinion in *Leary* is inapposite.

In *Leary*, 528 F.3d 438, the Sixth Circuit did not consider common law assault and battery claims under Michigan law. Rather, *Leary* involved a pretrial detainee who brought a federal civil rights action under 42 U.S.C. § 1983 claiming a violation of his right to due process protected by the Fourteenth Amendment to the United States Constitution based on excessive force by a police officer. The police arrested Shaun Leary on charges of criminal sexual conduct against a minor and detained him in a jail. During the intake process at the jail, a police officer used the side of his open hand to slap or strike Mr. Leary one time on the back of Leary's neck. This open-handed slap was described as a "karate chop kind of deal." Mr. Leary did not suffer a bruise or any other objectively verifiable injury from the blow. There was no physician's care or medical treatment required after the slapping incident. During his discovery deposition, Mr. Leary admitted that the slap did not hurt, he did not suffer any physical injury, and he never sought medical treatment.

20

Leary's excessive force claim brought under 42 U.S.C. § 1983 and the Fourteenth Amendment's Due Process Clause was dismissed on summary judgment by the district court pursuant to Fed. R. Civ. P. 56. The Sixth Circuit affirmed the judgment on appeal. The Sixth Circuit determined that the slight amount of force used against Leary was *de minimis* and did not rise to the level of a federal constitutional violation. To bring a claim for excessive force under either the Eighth Amendment's Cruel and Unusual Punishment Clause or the Fourteenth Amendment's Due Process Clause, a plaintiff is required to show something more than the use of *de minimis* force. *Leary*, 528 F.3d 443 (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)); *see also Bell v. Wolfish*, 441 U.S. 520, 539 n. 21 (1979); *United States v. Budd*, 496 F.3d 517, 530-31 (6th Cir. 2007). Generally, a single isolated push, shove, punch, or blow by a prison guard or police officer using *de minimis* force does not rise to the level of a violation of the United States Constitution. For example, the objective component of a prisoner's Eighth Amendment cruel and unusual punishment claim predicated an a prison guard's use of excessive force must involve more than a simple assault and battery under state law. *Parrish v. Johnson*, 800 F.2d 600, 604-05 (6th Cir. 1986); *Baily v. King*, 2010 WL 310309, * 6 (W.D. Mich. Jan. 21, 2010); *Williams v. Jones*, 2009 WL 1966298, * 4 (W.D. Mich. July 6, 2009); *Neal*, 778 F. Supp. at 383.

In *Leary*, 528 F.3d at 445, the Sixth Circuit explains that the key point of the *de minimis* force rule is to make it clear that the United States Constitution is not a "font of tort law" that the federal courts can superimpose upon the systems of civil tort law that already exist in the States. *Paul v. Davis*, 424 U.S. 693, 701 (1976). As a matter of state tort law, it may be that the least touching of another in anger is a battery, but that does not make it a violation of a federal constitutional right actionable under 42 U.S.C. § 1983. *Leary*, 528 F.3d at 445; *Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir. 1997) (en banc). Otherwise, every minor touching of a prisoner or pretrial detainee by a

21

prison guard or police officer would become an actionable federal civil rights claim under the Constitution and 42 U.S.C. § 1983, blurring the lines between the state courts' enforcement of state tort laws and the enforcement of the United States Constitution by federal courts. "Whatever else non-actionable de minimis force may be, it must include a touching that neither 'hurt' nor threatened the individual." *Leary*, 528 F.3d at 445.

*Leary* and this line of precedent do not provide any help to defendant United States in Moher's case. There are two reasons why *Leary* is inapposite here. First, *Leary* was decided on summary judgment under Fed. R. Civ. P. 56 after Mr. Leary had been deposed, unlike plaintiff Moher's case which is before this Court for review of the second amended complaint under Rule 12(b)(6). The parties in the instant case have not taken discovery and have not deposed Moher to more fully develop the facts and evidence concerning the precise nature and extent of Moher's alleged injuries caused by the assault and battery.

Second, *Leary* did not involve the review of a battery claim under Michigan law. The analysis of a battery claim under Michigan law based on a law enforcement officer's use of force is different from the analysis of excessive force claims brought by pretrial detainees and prisoners under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution. Minimal physical touching of plaintiff Moher by the border patrol officers can support a viable cause of action for battery under Michigan law if the use of force was unnecessary and unreasonable. There can be an actionable battery claim under Michigan law, even though the amount of force used by the border patrol officers against Moher may have been *de minimis* and insufficient to support an excessive force claim under the United States Constitution. *Neal*, 778 F. Supp. 378; *cf. Leary*, 528 F.3d at 445.

Next , defendant United States argues that the FTCA assault and battery claims should be

22

dismissed under Rule 12(b)(6) because the conduct of the border patrol officers was objectively reasonable. Defendant contends that in order for Moher to prevail on his assault and battery claims under Michigan law, Moher must show that the conduct of the border patrol officers was not objectively reasonable. Defendant takes the position that if the conduct of the officers was objectively reasonable, there is no actionable assault and battery under Michigan law.

Defendant relies primarily on *VanVorous*, 687 N.W.2d 132. In *VanVorous*, the personal representative of an estate brought several tort claims against police officers including assault and battery. The Michigan circuit court dismissed the tort claims and the plaintiff took an appeal. The Michigan Court of Appeals affirmed. When analyzing the assault and battery claims, the Michigan Court of Appeals stated:

> But again, government actors may find it necessary – and are permitted – to act in ways that would, under different circumstances, subject them to liability for an intentional tort. To find for plaintiff on these claims, our courts would have to determine that the officers' actions were not justified because they were not objectively reasonable under the circumstances.

*VanVorous*, 687 N.W.2d at 142 (citing *Brewer v. Perrin*, 349 N.W.2d 198, 202 (Mich. Ct. App. 1984)); *see also Pershell v. Cook,* 430 Fed. Appx. 410, 416-17 (6th Cir. 2011).

Based on *VanVorous*, the United States argues that it is not subject to tort liability under the FTCA and Michigan law for the alleged conduct of its border patrol officers, even if the officers might be liable for assault and battery if they had performed the same conduct as non-government actors, i.e. not in their capacity as law enforcement officers. It is argued that because the officers used the minimum amount of force necessary as authorized by 8 C.F.R. § 287.8(a)(1), their conduct was objectively reasonable and does not constitute assault and battery under Michigan law.

Generally, under Michigan law a police officer may use such force as is reasonably necessary to perform his official duties such as, for example, making an arrest or subduing a person suspected

23

of committing a crime.  If a police officer uses force that is objectively reasonable under the circumstances, the officer's actions are "justified" and he does not commit an assault and battery. However, if a police officer uses excessive force or more force than is reasonably necessary, his conduct is not justified (not objectively reasonable) and he may be individually liable for assault and battery. *Lanman v. Hinson*, 529 F.3d 673, 690 (6th Cir. 2008); *Landis v. Baker*, 297 Fed. Appx. 453, 466 (6th Cir. 2008); *Lawler v. City of Taylor*, 268 Fed. Appx. 384, 388 (6th Cir. 2008); *Marvin v. City of Taylor*, 509 F.3d 234, 252 (6th Cir. 2007); *Murry v. Yuchasz*, 2006 WL 3077462, * 3 (Mich. Ct. App. Oct. 31, 2006); *Brassel v. Laban*, 2006 WL 782163, * 3 (Mich. Ct. App. March 28, 2006); *Young v. Barker*, 405 N.W.2d 395, 402 (Mich. Ct. App. 1987); *White v. City of Vassar*, 403 N.W.2d 124, 130 (Mich. Ct. App. 1987); *Brewer*, 349 N.W.2d at 202.

The measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the police officer, would have deemed necessary. *Marvin*, 509 F.3d at 252; *Brewer*, 349 N.W.2d at 202.  To determine whether the amount of force used by a police officer is justified, the Court inquires whether that force was objectively reasonable under the circumstances. *Landis*, 297 Fed. Appx. at 466; *Murry*, 2006 WL 3077462, at * 3; *Brassel*, 2006 WL 782163, at * 3; *VanVorous*, 687 N.W.2d at 142.

The Court rejects the defendant's argument.  This matter is before the Court on the Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted.  The Court cannot go beyond the standard of review under Rule 12(b)(6) and make a finding of fact whether the amount of force used by the border patrol officer against Moher was justified and objectively reasonable.  This factual issue is in dispute and may be decided either at trial or on summary judgment motion under Rule 56, but it cannot be decided on a Rule 12(b)(6) motion to dismiss.  As the Magistrate Judge correctly states in the report and recommendation, it may not have

24

been necessary and reasonable for the border patrol officers to use any force against Moher.

The bottom line is that plaintiff Moher's second amended complaint sufficiently pleads claims for assault and battery under Michigan law that survive the Rule 12(b)(6) motion to dismiss.

### E.  Michigan Doctrine of Qualified Immunity for Governmental Employees From Intentional Tort Liability

Defendant argues that the assault and battery claims should be dismissed under Rule 12(b)(6) based on the Michigan doctrine of qualified immunity for governmental employees from intentional tort liability pursuant to the standards enunciated by the Michigan Supreme Court in *Odom v. Wayne County*, 760 N.W.2d 217 (Mich. 2008) and *Ross v. Consumers Power Co.*, 363 N.W.2d 641, 667-68 (Mich. 1984).  The defendant's argument is without merit.

Under Michigan law, a governmental employee is immune from liability for intentional torts such as assault and battery if he can establish that: (1) the employee's challenged acts were undertaken during the course of his government employment, and the employee was acting, or reasonably believed that he was acting, within the scope of his authority; (2) the acts were undertaken in good faith; and (3) the acts were discretionary in nature as opposed to ministerial acts. *Odom*, 760 N.W.2d at 228-29; *Ross*, 363 N.W.2d at 667-68; *see also Scozzari v. Miedzianowski,* 454 Fed. Appx. 455, 467 (6th Cir. 2012); *Bletz*, 641 F.3d at 757; *Pershell,* 430 Fed. Appx. at 416-17; *Thornton,* 429 Fed. Appx. at 511; *Binay,* 601 F.3d at 653; *Bell v. Porter,* 739 F. Supp.2d 1005, 1015 (W.D. Mich. 2010); *Norris v. Police Officers for City of Lincoln Park*, 2011 WL 833236, * 2 (Mich. Ct. App. March 10, 2011).

With regard to the third factor, discretionary acts require personal deliberation, decision, and judgment.  *Odom*, 760 N.W.2d at 226; *Ross*, 363 N.W.2d at 668.  This definition of discretionary acts encompasses more than quasi-judicial or policymaking authority, which typically is granted only

to members of administrative tribunals, prosecutors, and higher level executives.  Discretionary acts do not encompass every trivial decision which may be involved in performing an activity.  *Ross*, 363 N.W.2d at 668.  Although an employee's decision need not be extraordinary, qualified immunity from intentional tort liability under Michigan law is not afforded for every trivial decision that a government employee may make.  *Odom*, 760 N.W.2d at 226.  Granting qualified immunity to a government employee engaged in discretionary acts allows the employee to make decisions and resolve problems without the constant fear of potential tort liability.  *Odom*, 760 N.W.2d at 226.

"Ministerial" acts are defined as those which "constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice."  *Odom*, 760 N.W.2d at 226 (quoting *Ross*, 363 N.W.2d at 634).  When a government employee executes an act once a decision has been made, the act is primarily ministerial in nature.  In *Ross*, the Michigan Supreme Court stated that this definition of "ministerial" acts is not sufficiently broad.

> An individual who decides whether to engage in a particular activity and how best to carry it out engages in discretionary activity. However, the actual execution of this decision by the same individual is a ministerial act, which must be performed in a non-tortious manner.  In a nutshell, the distinction between "discretionary" and "ministerial" acts is that the former involves significant decision-making, while the latter involves the execution of a decision and might entail some minor decision-making.  Here too, for clarity, we would add the word "operational" so the operative term would be "ministerial-operational" acts.
>
> Many individuals are given some measure of discretionary authority in order to perform their duties effectively.  Therefore, to determine the existence and scope of the individual's immunity from tort liability in a particular situation, the specific acts complained of, rather than the general nature of the activity, must be examined.  The ultimate goal is to afford the officer, employee, or agent enough freedom to decide the best method of carrying out his or her duties, while ensuring that the goal is realized in a conscientious manner.

*Ross*, 363 N.W.2d at 668.

26

When deciding whether the challenged conduct of the border patrol officer and the use of force against Moher which forms the basis for the assault and battery claims constitute either discretionary or ministerial acts under Michigan law, this Court is guided by the following excerpt from *Odom*:

> Police officers perform many discretionary acts each day. An officer must use his judgment to determine whether there is reasonable suspicion to investigate or probable cause to arrest and to *determine the amount of force necessary* to effectuate an arrest. A police officer similarly conducts many ministerial acts each day, such as completing activity logs and police reports, or following the procedures for booking an arrested person. (Emphasis supplied).

*Odom*, 760 N.W.2d at 226. *Odom* teaches us that when the border patrol officer decided to use force against Moher, this constituted a discretionary act, not a ministerial act, for purposes of applying the Michigan doctrine of qualified immunity from intentional tort liability.

In the present case, the first and third factors weigh in favor of finding that there is qualified immunity under Michigan law for Moher's assault and battery claims. The officers were lawfully on patrol for illegal immigration activity on Sugar Island pursuant to 8 U.S.C. § 1357(a)(3) when the alleged assault and battery occurred. The use of force against Moher was undertaken during the course of the officer's employment by the United States, and the officer was acting, or reasonably believed that he was acting, within the scope of his authority under federal law. For purposes of this opinion, the Court assumes *arguendo* that the border patrol officer's actions were discretionary rather than ministerial with regard to his decision about the amount of force he thought was necessary under the circumstances.

The key issue here focuses on the second factor: whether the border patrol officer acted in good faith when he used force against Moher. Under Michigan law a government employee lacks good faith and is not entitled to qualified immunity from intentional tort liability when he acts

27

maliciously, or acts with a wanton or reckless disregard for the rights of another. *Scozzari,* 454 Fed. Appx. at 467; *Richardson v. Nasser,* 421 Fed. Appx. 611, 618 (6th Cir. 2011); *Bell,* 739 F. Supp.2d at 1015; *Odom*, 760 N.W.2d at 225. Good faith essentially means without malice. *Bletz*, 641 F.3d at 757; *Miller v. Sanilac County*, 606 F.3d 240, 254 (6th Cir. 2010); *Gentry v. Wayne County Deputy Sheriff Carmona*, 2011 WL 4810847, * 6 (Mich. Ct. App. Oct. 11, 2011); *Norris*, 2011 WL 833236, at * 2; *see also Scozzari,* 454 Fed. Appx. at 467. There is willful and wanton misconduct if the conduct shows an intent to harm, or such indifference to whether the harm will result as to be the equivalent of a willingness that it does. *Scozzari,* 454 Fed. Appx. at 467; *Odom*, 760 N.W.2d at 225; *Burnett v. City of Adrian*, 326 N.W.2d 810, 812 (Mich. 1982).

The good-faith element of the Michigan qualified immunity test is subjective in nature. It protects a government employee's "honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Scozzari,* 454 Fed. Appx. at 467; *Bletz*, 641 F.3d at 757; *Pershell,* 430 Fed. Appx. at 417; *Odom*, 760 N.W.2d at 229; *Norris*, 2011 WL 833236, at * 2; *Oliver v. Smith*, 2010 WL 4751766, * 5 (Mich. Ct. App. Nov. 23, 2010). When analyzing the subjective good-faith element, the Court does not review the facts to determine whether the actions of the border patrol officer were objectively reasonable. *Scozzari,* 454 Fed. Appx. at 467; *Odom*, 760 N.W.2d at 229. Because defendant United States is the proponent of qualified immunity in this case, it bears the burden of establishing that the border patrol officer acted in subjective good faith and without malice. *Scozzari,* 454 Fed. Appx. at 468; *Bletz*, 641 F.3d at 757.

In his second amended complaint, plaintiff Moher alleges that the border patrol officer "maliciously" assaulted him. The complaint further alleges that the border patrol officer committed the assault and battery "in bad faith." This is sufficient to state viable assault and battery claims under Michigan law that survive the defendant's Rule 12(b)(6) motion to dismiss on the basis of the

28

Michigan qualified immunity doctrine.

In the report and recommendation, the Magistrate Judge correctly states that there is a factual dispute whether the challenged actions of the border patrol officer – use of force against Moher that constitutes the basis for the assault and battery claims – were done in good faith. The Magistrate Judge correctly reasons that the analysis concerning whether the assault and battery claims should be dismissed under Rule 12(b)(6) based on the Michigan qualified immunity doctrine "requires a factual determination that is beyond the scope of the allegations within the plaintiff's amended complaint." [Court Doc. No. 15, Report and Recommendation, p. 6]. The Court agrees with the Magistrate Judge. This matter is before the Court on the defendant's Rule 12(b)(6) motion to dismiss. At this juncture the Court cannot go beyond the standard of review applicable to the Rule 12(b)(6) motion and make a finding of disputed fact whether the border patrol officer who is alleged to have committed the assault and battery acted in subjective good faith.

Moher's assault and battery claims brought under the FTCA to recover compensatory damages survive the defendant's Rule 12(b)(6) motion to dismiss based on the Michigan doctrine of qualified immunity for governmental employees in *Odom*, 760 N.W.2d 217, and *Ross*, 363 N.W.2d at 667-68.

F. **28 U.S.C. § 2680(a): Due Care Exception**

Defendant argues that the assault and battery claims are barred by the due care exception in 28 U.S.C. § 2680(a). The first clause of § 2680(a) provides that 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671-2679, shall not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid ....

The due care exception prevents the United States from being held liable for the actions of

29

its officers and employees undertaken while reasonably executing the mandates of a federal statute or regulation. *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). In applying the federal standard for what constitutes due care under § 2680(a), the relevant question is one of reasonableness. *Hydrogen Technology Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir. 1987).

The Fourth Circuit in *Welch* articulated a two-part test to determine whether the due care exception bars a tort claim against the United States under the FTCA. First, the Court must determine whether the federal statute or administrative regulation in question specifically proscribes or mandates a course of action for an officer or employee of the United States government to follow. Second, if a specific action is mandated, the Court must determine whether the government officer or employee exercised due care, i.e. acted reasonably, in following the dictates of that federal statute or regulation. If due care (reasonable care) was exercised, 28 U.S.C. § 2680(a) bars liability on that tort claim because the United States has not waived its sovereign immunity under the FTCA. *Welch*, 409 F.3d at 652; *see also Lyttle v. United States,* 2012 WL 1108861, * 33 (M.D. Ga. March 31, 2012); *Manning v. United States,* 2011 WL 4024503, ** 3-4 (E.D. N.C. Sept. 9, 2011); *In re Katrina Canal Breaches Consolidated Litigation,* 627 F. Supp.2d 656, 667-68 (E.D. La. 2009); *Turnbull v. United States,* 2007 WL 2153279, * 7 (N.D. Ohio July 23, 2007).

The Sixth Circuit Court of Appeals has neither adopted nor rejected the Fourth Circuit's two-part test in *Welch*. There is a dearth of case law from the Sixth Circuit on the 28 U.S.C. § 2680(a) due care exception. In the absence of any reported Sixth Circuit case law directly on point, this District Court agrees with and utilizes the *Welch* test to determine whether the due care exception is applicable and bars Moher's assault, and battery claims.

The Rule 12(b)(1) motion to dismiss the assault and battery claims based on the due care exception is denied. The Court assumes *arguendo* that the first prong of the *Welch* test is arguably

met.  8 C.F.R. § 287.8(a)(1)(ii) provides that border patrol officers may use non-deadly force when they have "reasonable grounds to believe that such force is necessary."  8 C.F.R. § 287.8(a)(1)(iii) provides that border patrol officers "shall always use the minimum non-deadly force necessary to accomplish the officer's mission and shall escalate to a higher level of non-deadly force only when such higher level of force is warranted by the actions, apparent intentions, and apparent capabilities of the suspect, prisoner, or assailant."  Under the first prong of the *Welch* test, 8 C.F.R. § 287.8(a)(1)(iii) mandates that the border patrol officers use the minimum force necessary to accomplish their mission.

The second prong of the *Welch* test is not satisfied.  There is a factual issue in dispute whether the border patrol officers acted with due care (reasonable care) in using any force against Moher.  As the Magistrate Judge states in the report and recommendation, it may not have been necessary and reasonable for the border patrol officer to use any force whatsoever against Moher. The Court is not persuaded that the assault and battery claims should be dismissed at this juncture under Rule 12(b)(1) based on the defendant's theory that the border patrol officers acted with due care in using force against Moher.  It remains to be decided whether the actions of the border patrol officers were reasonable.  At this early stage of the litigation, Moher has alleged sufficient facts in his second amended complaint to overcome the due care exception to FTCA liability with regard to the assault and battery claims.  *Cf. Lyttle v. United States,* 2012 WL 1108861, at * 33.  Accordingly, the Court rejects the defendant's argument that Moher's assault and battery claims should be dismissed under Rule 12(b)(1) based on the due care exception in 28 U.S.C. § 2680(a).

## G.     28 U.S.C. § 2680(h): Intentional Torts Exception

28 U.S.C. § 2680(h) provides an exception to the limited waiver of sovereign immunity under the FTCA for specified intentional torts.  28 U.S.C. § 2680(h) provides that 28 U.S.C. §§ 1346(b)

and 2671-2680, shall not apply to:

> (h)  Any claim arising out of assault, battery, false imprisonment,
> false arrest, malicious prosecution, abuse of process, libel, slander,
> misrepresentation, deceit, or interference with  contract rights;
> *Provided*, That, with regard to acts or omissions of investigative or
> law enforcement officers of the United States Government, the
> provisions of this chapter and section 1346(b) of this title [28 U.S.C.
> §§ 1346(b) and 2671-2680] shall apply to any claim arising, on or
> after the date of the enactment of this proviso, out of assault, battery,
> false imprisonment, false arrest, abuse of process, or malicious
> prosecution.  For the purpose of this subsection, "investigative or
> law enforcement officer" means any officer of the United States
> who is empowered by law to execute searches, to seize evidence, or
> to make arrests for violations of Federal law. (Emphasis in original).

Moher's claims for assault and battery are not barred by § 2680(h).  The United States may

be sued under the FTCA on the assault and battery claims because the border patrol officers are

investigative or law enforcement officers who fall under the law enforcement proviso of § 2680(h).

*Castro v. United States*, 560 F.3d 381, 388 (5th Cir. 2009); *Medina v. United States*, 259 F.3d 220,

224 (4th Cir. 2001); *Ysasi v. Rivkind*, 856 F.2d 1520, 1524-25 (Fed. Cir. 1988); *Caban v. United*

*States*, 728 F.2d 68, 72 (2nd Cir. 1984); *Sanchez v. Rowe*, 651 F. Supp. 571, 573 (N.D. Tex. 1986).

28 U.S.C. § 2680(h) is not an impediment to Moher bringing his assault and battery claims under

the FTCA.

### H.    28 U.S.C. § 2680(a):  Discretionary Function Exception

Defendant United States argues that regardless of the proviso in § 2680(h) which specifically

waives sovereign immunity for Moher's assault and battery claims, these tort claims are barred by

the discretionary function exception in 28 U.S.C. § 2680(a).  The second clause in § 2680(a)

provides that the FTCA, 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671-2679, shall not apply to:

> Any claim ... based upon the exercise or performance or the failure
> to exercise or perform a discretionary function or duty on the part
> of a federal agency or an employee of the Government, whether or
> not the discretion be abused.

32

The discretionary function exception insulates the United States from liability for tort claims arising out of a federal employee's exercise of a discretionary function or duty. *United States v. Gaubert*, 499 U.S. 315, 322-26 (1991). If the discretionary function exception applies and if Congress has not otherwise waived the sovereign immunity of the United States, this Court lacks subject matter jurisdiction over the tort claim. *Milligan*, 670 F.3d at 692-93; *Sharp*, 401 F.3d at 443.

In the context of the defendant's Rule 12(b)(1) motion to dismiss, plaintiff Moher bears the burden of showing there is subject matter jurisdiction under the FTCA by pleading facts which facially allege a tort claim that falls outside of the discretionary function exception. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009); *St. Tammany Parish v. Federal Emergency Management Agency*, 556 F.3d 307, 315 n. 3 (5th Cir. 2009); *Carlyle v. United States, Department of the Army*, 674 F.2d 554, 556 (6th Cir. 1982); *Alef*, 990 F. Supp. at 933; *Angle v. United States*, 931 F. Supp. 1386, 1390 (W.D. Mich. 1994), *aff'd*, 89 F.3d 832 (Table, text in 1996 WL 343531 (6th Cir. June 20, 1996)) (per curiam). This standard is consistent with *Gaubert*, 499 U.S. at 324-25.

The key question to be resolved is how the discretionary function exception in § 2680(a) and the law enforcement proviso in § 2680(h) interact in the event that they both apply to Moher's assault and battery claims. Defendant contends that the assault and battery claims must clear the hurdle of the discretionary function exception before Moher can bring these tort claims pursuant to the proviso in § 2680(h). It is argued that despite the explicit waiver of sovereign immunity for the assault and battery claims in § 2680(h), these tort claims are barred by the discretionary function exception. The United States relies on *Medina*, 259 F.3d at 223-26; *Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994); *Pooler v. United States*, 787 F.2d 868, 871-72 (3rd Cir. 1986); *Gray v. Bell*, 712 F.2d 490, 508 (D.C. Cir. 1983); *Jackson v. United States*, 77 F. Supp.2d. 709, 713 (D. Md. 1999).

There is a disagreement and split of authority among the federal circuit courts regarding the

interaction between the discretionary function exception in § 2680(a) and the proviso in § 2680(h). The Sixth Circuit has not yet decided this question. *Milligan v. United States*, 670 F.3d 686, 695 n. 2 (6th Cir. 2012).

This Court rejects the argument of the United States which is based on the line of precedent in *Medina*, *Pooler*, and *Gray*. In the absence of a Sixth Circuit decision directly on point, this District Court adopts and follows the Eleventh Circuit's well reasoned opinion in *Nguyen v. United States*, 556 F.3d 1244 (11th Cir. 2009). The cogent legal analysis in *Nguyen* is persuasive. When the discretionary function exception in § 2680(a) and the proviso in § 2680(h) both apply to a tort claim, the more specific statutory language in § 2680(h) takes precedence over and trumps the general language in the discretionary function exception. To the extent that there is any overlap and conflict between these two statutory provisions, the proviso in § 2680(h) wins. This is consistent with the plain language of the proviso in § 2680(h), canons of statutory construction, and the clear purpose of Congress in enacting the proviso in § 2680(h). *Nguyen*, 556 F.3d at 1250-60.

Based on *Nguyen*, this Court concludes that the discretionary function exception does not bar Moher's assault and battery claims. Moher has met his burden of showing there is subject matter jurisdiction under the FTCA by pleading facts which facially allege viable assault and battery claims under the proviso in § 2680(h). Assuming *arguendo* that the border patrol officer's decision to use force against Moher is deemed to be a discretionary function, the assault and battery claims are not barred by the discretionary function exception because Congress has expressly waived sovereign immunity for these specific tort claims in the proviso in § 2680(h). Where the § 2680(h) proviso applies to waive sovereign immunity for the assault and battery claims, the discretionary function exception is of no effect. *Nguyen*, 556 F.3d at 1250-60; *see also, Williams v. United States*, 314 Fed. Appx. 253, 258 (11th Cir. 2009).

34

The proviso in § 2680(h) is a specific statute enacted by Congress to deliberately target a specific problem with a specific solution, i.e. limited waiver of sovereign immunity for certain intentional torts committed by investigative or law enforcement officers of the United States government, including assault and battery. The § 2680(a) discretionary function exception is a more general statute. It is a well established canon of statutory construction that a specific statutory provision governs and takes precedence over a more general one, regardless of the sequence in which they were enacted. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, __ U.S. __, 2012 WL 1912197, * 4 (U.S. Sup. Ct. May 29, 2012); *Corley v. United States*, 556 U.S. 303, 305 (2009); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-85 (1992); *Busic v. United States*, 446 U.S. 398, 406 (1980); *Nguyen*, 556 F.3d at 1252-53; *First American Title Co. v. Devaugh*, 480 F.3d 438, 450-51 (6th Cir. 2007); *United States v. Perry*, 360 F.3d 519, 535 (6th Cir. 2004); *Metropolitan Hospital, Inc. v. United States Department of Health and Human Services*, 702 F. Supp.2d 808, 824 (W.D. Mich. 2010). Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general statute, regardless of the priority of enactment. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976); *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974).

General language in a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same statute or enactment. *Bloate v. United States*, 130 S.Ct. 1345, 1354 (2010); *D. Ginsburg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932). This is especially true where, as in the FTCA, Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions in the proviso in § 2680(h). *RadLAX Gateway Hotel*, 2012 WL 1912197, at * 4; *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting); *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981)

(per curiam) (the specific statute governs the general statute particularly when the two are interrelated and closely positioned, both being parts of the same statutory scheme).

In *RadLAX Gateway Hotel*, 2012 WL 1912197, at * 4, the Supreme Court explains that the general/specific canon is most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission.  To eliminate the contradiction, the specific statutory provision is construed as an exception to the general one.  *See e.g. Morton*, 417 U.S. at 550-51; *Nguyen*, 556 F.3d at 1253; *ConArt, Inc. v. Hellmuth, Obata + Kassabaum, Inc.*, 504 F.3d 1208, 1210 (11th Cir. 2007) (when presented with a potential overlap between the broadly sweeping  terms of a statute of general application that appear to apply to an entire class, and the narrow but specific terms of a statute that apply to only a subgroup of that class, the court avoids conflict between the two statutes by reading the specific statute as an exception to the general one); *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 949 (11th Cir. 2001).  The specific waiver of sovereign immunity in the proviso in § 2680(h) for certain torts committed by investigative or law enforcement officers of the United States government is properly construed as an exception to the general discretionary function exception in § 2680(a).  *Nguyen*, 556 F.3d at 1253.  In other words, the discretionary function exception in § 2680(a) is not applicable to and does not bar Moher's assault and battery claims which are specifically allowed by the proviso in § 2680(h).

The general/specific canon of statutory construction is not an absolute rule.  It is merely a strong indication of statutory meaning and can be overcome by indications in the text of the statutory provisions that point in the other direction.  *RadLAX Gateway Hotel*, 2012 WL 1912197, at * 5.  In the present case, defendant United States does not point to any such indications in the text of 28 U.S.C. § 2680(a) and (h) that would allow this Court to go in the other direction and arrive at a different construction of the statute.

Furthermore, the discretionary function exception has been part of 28 U.S.C. § 2680(a) since 1946. Congress amended 28 U.S.C. § 2680(h) in 1974 to add the law enforcement proviso. When the subsections of a statute overlap and appear to be in conflict, it is a canon of statutory construction that the later enacted provision controls to the extent that there is any conflict with the earlier one. *Nguyen*, 556 F.3d at 1253; *ConArt*, 504 F.3d at 1210 (11th Cir. 2007); *Tug Allie-B*, 273 F.3d at 948-49; *Hines, Inc. v. United States*, 551 F.2d 717, 725 (6th Cir. 1977) (as a general rule, when the purposes of two statutes appear to be in conflict with each other, and there is no statutory language which makes any cross-reference, and the legislative history is silent as to the possible conflict, it is assumed that the later statute constitutes an amendment of the earlier statute).

If this Court were to accept the defendant's argument that the discretionary function exception in § 2680(a) takes precedence over and trumps the specific proviso in § 2680(h), it would defeat the clear purpose intended by Congress when it amended § 2680(h) to add the law enforcement proviso. *Nguyen*, 556 F.3d at 1256; *Sutton v. United States*, 819 F.2d 1289, 1297 (5th Cir. 1987) (if the law enforcement proviso in § 2680(h) is to be more than an illusory – now you see it, now you don't – remedy, the discretionary function exception cannot be an absolute bar which one must clear to proceed on a tort claim allowed under the proviso in § 2680(h)).

Accordingly, the defendant's Rule 12(b)(1) motion to dismiss Moher's assault and battery claims under the discretionary function exception must be denied. The discretionary function exception does not bar the assault and battery claims which are specifically allowed under the law enforcement proviso in § 2680(h).

**VI.    Analysis of Count II:  Declaratory Judgment**

There are two parts to Count II of the second amended complaint wherein Moher demands a declaratory judgment under 28 U.S.C. § 2201. First, Moher seeks a declaratory judgment that the

border patrol officers violated 8 U.S.C. § 1357(e) by making a warrantless entry onto his land on Sugar Island to patrol for illegal immigration activity without Moher's consent. Moher wants the Court to declare that, absent a search warrant or exigent circumstances, the federal officers are required by 8 U.S.C. § 1357(e) to obtain Moher's consent to enter upon his land on Sugar Island to patrol for illegal immigration activity. In the alternative, if the Court determines that the officers did not violate 8 U.S.C. § 1357(e) and are not required by § 1357(e) to obtain Moher's consent before entering upon his land on Sugar Island without a search warrant to patrol for illegal immigration activity, then Moher seeks a declaratory judgment that 8 U.S.C. § 1357(a)(3), as-applied to him, violates Moher's right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches.

In Count II, Moher does not plead any tort claims based on Michigan law cognizable under the FTCA. Rather, Moher seeks to use 28 U.S.C. § 2201 as an independent basis to invoke this Court's subject matter jurisdiction. The Court concludes that Count II in the second amended complaint must be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

### A.     28 U.S.C. § 2201 Does Not Create or Confer Subject Matter Jurisdiction

Moher cannot use 28 U.S.C. § 2201 as an independent basis to establish subject matter jurisdiction. 28 U.S.C. § 2201(a) provides in part that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought."

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, is procedural in nature and cannot serve as an independent basis for conferring subject matter jurisdiction. The Declaratory Judgement Act enlarges the range of remedies available in federal courts but it does not create or expand the

scope of subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950); *Davis v. United States,* 499 F.3d 590, 594 (6th Cir. 2007); *Toledo v. Jackson,* 485 F.3d 836, 839 (6th Cir. 2007); *Heydon v. MediaOne of Southeast Michigan, Inc.,* 327 F.3d 466, 470 (6th Cir. 2003); *Michigan Southern Railroad Co. v. Branch & St. Joseph Counties Rail Users Association, Inc.,* 287 F.3d 568, 575 (6th Cir. 2002); *Louisville & Nashville R. Co. v. Donovan,* 713 F.2d 1243, 1245 (6th Cir. 1983); *Michigan Savings and Loan League v. Francis,* 683 F.2d 957, 960 (6th Cir. 1982); *King v. Sloane,* 545 F.2d 7, 8 (6th Cir. 1976); *Michigan Dept. of Community Health Lake v. Woodcare X, Inc.*, 2010 W.L. 331706, * 4 (W.D. Mich. Jan. 22, 2010).

28 U.S.C. § 2201 does not create or grant any subject matter jurisdiction where none otherwise exists. It only provides federal courts with the authority to fashion the remedy of a declaratory judgment in civil actions where the Court already has subject matter jurisdiction on some other basis. Before Moher can invoke 28 U.S.C. § 2201 to demand a declaratory judgment in Count II of his second amended complaint, he bears the burden of establishing that this Court has subject matter jurisdiction under some other federal statute. *Davis,* 499 F.3d at 594; *Toledo,* 485 F.3d at 839; *Heydon,* 327 F.3d at 470; *King,* 545 F.2d at 8. Moher fails to meet his burden of establishing that there is subject matter jurisdiction over Count II.

**B.     No Subject Matter Jurisdiction Over Count II Under the FTCA, and 28 U.S.C. §§ 1331 and 1343(4)**

In his second amended complaint, Moher does not cite any source of subject matter jurisdiction over Count II beyond his mistaken reliance on 28 U.S.C. § 2201. Moher fails to identify a waiver of sovereign immunity by the United States that establishes jurisdiction.

With regard to the federal law claims alleged in Count II, there is no subject matter jurisdiction under the FTCA. The United States has not waived its sovereign immunity under the

39

FTCA on the federal law claims that the border patrol officers violated 8 U.S.C. § 1357(e) and 8 U.S.C. § 1357(a)(3) is unconstitutional as-applied to Moher on the theory that its violates his Fourth Amendment right to be free from unreasonable searches. The substantive basis for any tort claims brought by Moher under the FTCA must be Michigan law, not federal law. 28 U.S.C. § 1346(b)(1).

In *Meyer*, 510 U.S. at 476-78, the Supreme Court held that federal constitutional claims are not cognizable under the FTCA because they are not actionable under 28 U.S.C. § 1346(b). The United States has not consented to be sued and has not waived sovereign immunity under the FTCA for any federal constitutional claims. *Castro v. United States,* 560 F3d 381, 388-89 (5th Cir. 2009); *Jackson v. United States*, 114 F.3d 1187 (Table, text in 1997 WL 321123, * 2 (6th Cir. June 11, 1997)); *Williams v. United States*, 2011 WL 1113946, * 6 (E.D. Ky. March 24, 2011).

Furthermore, Moher cannot establish that this Court has subject matter jurisdiction over Count II pursuant to 28 U.S.C. §§ 1331 and 1343(4). In his first amended complaint, Moher cited 28 U.S.C. § 1331 as a basis for subject matter jurisdiction. 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Moher deleted or omitted § 1331 from his second amended complaint.

In a reply brief, Moher argues that the Court has subject matter jurisdiction over his "Declaratory Judgment Act claim" in Count II pursuant to 28 U.S.C. § 1331. Moher states:

> Plaintiff's claim that the border patrol claims authority to enter his property without prior permission or his notice is a claim that arises out of the laws of the United States. Defendant vigorously asserts its continued right to enter plaintiff's property without his permission and without notice, therefore there is an actual case and controversy And this court does have jurisdiction over it. Therefore, if there is a "case or controversy" pursuant to the Declaratory Judgment Act, then this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

[Court Doc. No. 13, p. 3].

This argument fails. In his second amended complaint, Moher does not plead that he is

invoking the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  He only raises this jurisdictional argument based on § 1331 in a reply brief which is inconsistent with his second amended complaint as pleaded.

Moher overlooks that defendant United States has sovereign immunity except to the extent that it has waived sovereign immunity and given its explicit, unequivocal consent to be sued.  To establish subject matter jurisdiction, Moher is required to show that the United States has waived sovereign immunity on his federal constitutional claims for declaratory judgment in Count II.  This Mohrer cannot do based on 28 U.S.C. § 1331.  The general federal-question jurisdiction statute in § 1331 does not provide any basis to exercise subject matter jurisdiction over Count II.  28 U.S.C. § 1331 is not an unequivocal waiver by the United States of its sovereign immunity from suit. *Normandy Apartments,* 554 F.3d at 1295; *Toledo,* 485 F.3d at 838; *High Country Citizens Alliance v. Clarke,* 454 F.3d 1177, 1181 (10th Cir. 2006); *Reed v. Reno,* 146 F.3d 392, 397-98 (6th Cir. 1998); *Whittle,* 7 F.3d at 1262.

The same is true of 28 U.S.C. § 1343(4) which provides that the district courts shall have original jurisdiction of any civil action authorized by federal law to be commenced by any person "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."  28 U.S.C. § 1343(4) cannot serve as a basis for this Court to exercise subject matter jurisdiction over Count II of Moher's second amended complaint because § 1343(4) does not waive the sovereign immunity of the United States.  *Jachetta v. United States,* 653 F.3d 898, 907-08 (9th Cir. 2011); *Trackwell v. United States Government,* 472 F.3d 1242, 1244 (10th Cir. 2007); *Salazar v. Heckler,* 787 F.2d 527, 528-29 (10th Cir. 1986).

Moher fails to identify a waiver of sovereign immunity by the United States that would establish subject matter jurisdiction over Count II of his second amended complaint and permit him

to bring his federal law claims seeking a declaratory judgment against the United States under 28 U.S.C. § 2201. Count II must be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) on the ground of lack of subject matter jurisdiction. To completely dispose of Count II, the Court will further discuss why Count II must also be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted under any viable legal theory, including the FTCA.

### C. Count II Fails to State Claim Cognizable Under FTCA

Based on 28 U.S.C. § 1346(b) and *Meyer*, 510 U.S. at 476-78 and its progeny discussed *supra*, Count II of the second amended complaint fails to state a viable claim upon which relief can granted under the FTCA. Any and all claims brought by Moher under the FTCA must be based on Michigan tort law, not alleged violations of federal law.

Moreover, the due care exception in 28 U.S.C. § 2680(a) provides that the FTCA shall not apply to "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, *whether or not such statute or regulation be valid*." (Emphasis supplied). This due care exception in § 2680(a) precludes Moher from utilizing the FTCA to bring a civil tort action against the United States for the purpose of making an as-applied Fourth Amendment claim challenging the constitutionality of 8 U.S.C. § 1357(a)(3). Under the FTCA, tort plaintiffs may challenge the manner in which federal employees implement federal laws, but tort plaintiffs may not challenge the legal validity or constitutionality of the federal laws themselves. *Dalehite v. United States*, 346 U.S. 15, 27-29, 33 (1953); *Moody v. United States,* 774 F.2d 150, 157 n. 9 (6th Cir. 1985); *Borquez v. United States,* 773 F.2d 1050, 1052 (9th Cir. 1985); *Dupree v. United States,* 247 F.2d 819, 824-25 (3rd Cir. 1957); *Welch v. United States*, 316 F. Supp.2d 252, 254-55 (D. Md. 2004), *aff'd*, 409 F.3d 646 (4th Cir. 2005); *Stewart v. United States*, 486 F. Supp. at 181 -82 (C.D. Ill. 1980).

In *Stewart*, 486 F. Supp. at 181, the court explains that the primary purpose of the due care exception in 28 U.S.C. § 2680(a) is to preclude tort plaintiffs from testing the legality of a federal statute or regulation by bringing a tort action against the United States under the FTCA.  *Accord*, *Welch*, 409 F.3d at 653; *Borquez,* 773 F.2d at 1052.  The *Stewart* court relied on the following legislative history:

> The bill is not intended to authorize a suit for damages to test the
> validity of or provide a remedy on account of such discretionary
> acts even though negligently performed and involving an abuse of
> discretion.  Nor is it desirable or intended that the constitutionality
> of legislation, or the legality of a rule or regulation should be
> tested through the medium of a damage suit for tort.

H.R. Rep. No. 2245, 77th Cong., 2d Sess. 10 (1942); S. Rep. No. 1196, 77th Cong., 2d Sess. 7 (1942); H.R. Rep. No. 1287, 79th Cong., 1st Sess. 5-6 (1945); *See also* Hearings on H.R. 5373 and H.R. 6463 Before House Comm. on Judiciary, 77th Cong., 2d Sess. 33 (1942); *see also Moody,* 774 F.2d at 157 n. 9.

Any federal constitutional claim brought by plaintiff Moher under the FTCA that 8 U.S.C. § 1357(a)(3), as applied to him in this case, violates the Fourth Amendment fails to state a viable claim under the FTCA and must be dismissed pursuant to Rule 12(b)(6).  This is precisely the type of claim which Congress intended to exclude from its limited waiver of sovereign immunity under the FTCA when it enacted the due care exception in 28 U.S.C. § 2680(a).

### D.    Count II Fails to State Claim For Violation of 8 U.S.C. § 1357(e)

Count II fails to state a claim based on the theory that the border patrol officers violated 8 U.S.C. § 1357(e) by making a warrantless entry onto Moher's land on Sugar Island without obtaining Moher's consent.  Assuming *arguendo* that Moher's income-producing timber land on Sugar Island is an "outdoor agricultural operation" for purposes of applying 8 U.S.C. § 1357(e), the facts alleged by Moher in his complaint do not support a viable claim that there was a violation of § 1357(e).

43

8 U.S.C. § 1357(e) provides:

> Restriction on warrantless entry in case of outdoor agricultural operations
>
> Notwithstanding any other provision of this section other than paragraph (3) of subsection (a) of this section, an officer or employee of the Service may not enter without the consent of the owner (or agent thereof) or a properly executed warrant onto the premises of a farm or other outdoor agricultural operation *for the purpose of interrogating a person believed to be an alien as to the person's right to be or to remain in the United States.* (Emphasis supplied).

There is a significant distinction between a situation where: (1) border patrol officers make a warrantless entry onto Moher's land on Sugar Island to patrol in open fields for illegal immigration activity pursuant to 8 U.S.C. § 1357(a)(3); and (2) border patrol officers make a site inspection of a business, commercial property, or outdoor agricultural operation for the specific purpose of interrogating a person whom the officers believe to be an alien concerning that person's right to be or remain in the United States pursuant to 8 U.S.C. § 1357(e) and 8 C.F.R. § 287.8(f). These two situations are not the same and they are treated differently under federal law.

The border patrol officers did not violate 8 U.S.C. § 1357(e) because they did not make a warrantless entry onto Moher's land on Sugar Island "for the purpose of interrogating a person believed to be an alien as to the person's right to be or to remain in the United States." The border patrol officers were not in the process of making a site inspection on Moher's land to interrogate a suspected illegal alien pursuant to 8 U.S.C. § 1357(e) and 8 C.F.R. § 287.8(f). Instead, the officers made the warrantless entry onto Moher's land to patrol in open fields for illegal immigration activity as authorized by 8 U.S.C. § 1357(a)(3) and this plainly does not violate 8 U.S.C. § 1357(e). Based on these facts, § 1357(e) is not applicable and the border patrol officers are not required by § 1357(e) to obtain Moher's consent to patrol his land on Sugar Island.

**E.**    **Count II Fails to State Unreasonable Search Claim Under Fourth Amendment;**

### Open Fields Doctrine and Inspections of Commercial Property

Moher claims that the statutory authority for the border patrol officers to make a warrantless entry upon his land on Sugar Island to patrol for illegal immigration activity, 8 U.S.C. § 1357(a)(3), is unconstitutional as applied to him.  It is claimed that when the defendant's employees patrol on Moher's land without a search warrant, absent exigent circumstances and without Moher's consent, it constitutes an unreasonable search in violation of the Fourth Amendment.

The Court concludes that Moher's as-applied Fourth Amendment claim challenging the constitutionality of 8 U.S.C. § 1357(a)(3) must be dismissed under Rule 12(b)(6).  Based on the facts alleged in Moher's second amended complaint, he does not have a viable Fourth Amendment unreasonable search claim.

The Fourth Amendment provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...."  The fundamental purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials."  *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967); *see also United States v. Warshak*, 631 F.3d 266, 283-84 (6th Cir. 2010).  Not all government actions are invasive enough to implicate the Fourth Amendment.  *Id*. at 284.

The protections afforded by the Fourth Amendment hinge on the occurrence of a search.  For purposes of Fourth Amendment analysis, a search occurs when the government infringes upon an expectation of privacy that society is prepared to consider objectively reasonable.  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *Warshak*, 631 F.3d at 284; *Widgren v. Maple Grove Township*, 429 F.3d 575, 578 (6th Cir. 2005).  This standard breaks down into two discrete inquiries.  The first inquiry is whether Moher manifested a subjective expectation of privacy in the place searched by the border patrol officers, i.e. Moher's timber land on Sugar Island.  The second inquiry is whether

society is willing to recognize that subjective expectation of privacy as reasonable. *California v. Ciralo*, 476 U.S. 207, 211 (1986); *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *Warshak*, 631 F.3d at 284; *Taylor v. Michigan Dept. of Natural Resources*, 502 F.3d 452, 455 (6th Cir. 2007); *Widgren*, 429 F.3d at 578-79.

Moher can satisfy the first inquiry but not the second. Based on the facts alleged in his second amended complaint, Moher manifested a subjective expectation of privacy in the place where the border patrol officers made the warrantless entry onto his land to patrol for illegal immigration activity. Moher had erected private security gates flanked by barbed wire fencing and he posted "No Trespassing" signs. But Moher cannot meet his burden of showing that he had an expectation of privacy in this land that society is willing to recognize as objectively reasonable. Moher's as-applied Fourth Amendment claim fails as a result of the application of the open-fields doctrine.

It is axiomatic that the Fourth Amendment protects an individual's home and its curtilage from unreasonable, warrantless searches. The curtilage is the land immediately surrounding and associated with the home. The curtilage harbors the intimate activities associated with the sanctity of a man's home and the privacies of domestic life. *United States v. Dunn*, 480 U.S. 294, 300 (1987); *Oliver v. United States*, 466 U.S. 170, 180 (1984); *Johnson v. Weaver*, 248 Fed. Appx. 694, 696 (6th Cir. 2007); *Hardesty v. Hamburg Township*, 461 F.3d 646, 652 (6th Cir. 2006). This case does not involve a search of Moher's home or its curtilage. The present case only involves a search of open forest land far away from Moher's home and its curtilage.

The Fourth Amendment right against unreasonable searches does not extend to open fields outside of the home and its curtilage. There is no objectively reasonable expectation of privacy in open fields under the Fourth Amendment. Open fields do not provide the setting for those intimate and private activities that the Fourth Amendment is intended to shelter and protect. *Oliver*, 466 U.S.

at 177-80 (no expectation of privacy legitimately attaches to open fields); *Hester v. United States*, 265 U.S. 57, 59 (1924); *Johnson*, 248 Fed. Appx. at 696; *Widgren*, 429 F.3d at 579-80; *United States v. Rapanos*, 115 F.3d 367, 372 (6th Cir. 1997).

The term "open fields" is legal term of art. For purposes of Fourth Amendment analysis, an "open field" need not be "open" nor a "field" as those terms are used in common speech. An open field includes any unoccupied or undeveloped area outside of the home and its curtilage. A thickly wooded area may be an open field. *Oliver*, 466 U.S. at 180 n. 11; *Widgren*, 429 F.3d at 579-80. The presence of gates, fences, and "No Trespassing" signs on real property does not transform an open field into an area where there is an objectively reasonable expectation of privacy protected by the Fourth Amendment. *Dunn*, 480 U.S. at 304-05; *Oliver*, 466 U.S. at 179, 181-83 and n. 13; *Johnson*, 248 Fed. Appx. at 696; *Widgren*, 429 F.3d at 577-80; *United States v. Elkins*, 300 F.3d 638, 654 (6th Cir. 2002); *United States v. Caldwell*, 238 F.3d 424 (unpublished, text in 2000 WL 1888682, * 6 (6th Cir. Dec. 19, 2000)); *Rapanos*, 115 F.3d at 372-73. "The rather typical presence of fences, closed or locked gates, and 'No Trespassing' signs on an otherwise open field therefore has no constitutional import." *Rapanos*, 115 F.3d at 372 (citing *Oliver*, 466 U.S. at 181-82).

Under the Fourth Amendment, "there is no constitutional difference between police observations conducted while in a public place and while standing in the open fields." *Dunn*, 480 U.S. at 304; *see also Widgren*, 429 F.3d at 579. When applying the open fields doctrine, the general rights of the owners of private real property "protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment." *Oliver*, 466 U.S. at 183-84; *see also Widgren*, 429 F.3d at 579-80.

The open-fields doctrine applies in Moher's case. The place where the federal officers entered and patrolled on Moher's timber land on Sugar Island is an open field. Moher did not have

an objectively reasonable expectation of privacy in that open field that is protected by the Fourth Amendment. *Widgren*, 429 F.3d at 577-80. When the federal officers patrol for illegal immigration activity pursuant to 8 U.S.C. § 1357(a)(3) in an open field, such as Moher's timber land on Sugar Island, it does not constitute a search protected under the Fourth Amendment.

Moher argues that while he does not reside on the land on Sugar Island, this does not necessarily mean he lacks a reasonable expectation of privacy in the property. Moher contends that his land is not an open field as described by the Supreme Court in *Oliver*, 466 U.S. 170. Moher says it is wooded land where the entrances or access points and roads are gated, fenced, and marked with "No Trespassing" signs. Moher emphasizes that his private land is not open to the public and is used to produce income from harvested timber. This argument fails because Moher's nonresidential timber land qualifies as an open field even though Moher installed security gates, fences, and "No Trespassing" signs. *Dunn*, 480 U.S. at 304-05; *Oliver*, 466 U.S. at 179, 181-83 and n. 13; *Widgren*, 429 F.3d at 577-80; *Elkins*, 300 F.3d at 654; *Rapanos*, 115 F.3d at 372-73.

Next, Moher argues that his timber land on Sugar Island is commercial property which is entitled to Fourth Amendment protection from unreasonable, warrantless searches by federal employees. Moher cites *Donovan v. Dewey*, 452 U.S. 594, 599 (1981) for the proposition that the Supreme Court recognizes that owners of commercial property and business premises have some reasonable expectation of privacy protected by the Fourth Amendment.

Generally, this is a correct statement of law as far as it goes. Business establishments, industrial facilities, and commercial property enjoy some level of protection under the Fourth Amendment. *Dow Chemical Co. v. United States*, 476 U.S. 227, 235 (1986); *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978); *See v. City of Seattle*, 387 U.S. 541 (1967). The Fourth Amendment's prohibition against unreasonable, warrantless searches of commercial premises exists not only with

respect to police searches to gather criminal evidence, but also inspections to enforce compliance with federal regulatory statutes and administrative regulations. *New York v. Burger*, 482 U.S. 691, 699 (1987); *Marshall*, 436 U.S. at 312-13; *Term Auto Sales, Inc. v. City of Cleveland*, 54 F.3d 777 (unpublished, text in 1995 WL 308988, * 2 (6th Cir. May 18, 1995)).

The United States government has greater latitude under the Fourth Amendment to conduct warrantless inspections of business facilities and commercial property as part of enforcement of a federal regulatory scheme because the expectation of privacy that the owner has in his commercial property is significantly different from the sanctity accorded to an individual's home or residence. Unlike a homeowner's strong privacy interest in the sanctity of his home, the business interest of a commercial property owner is not to be free from any government regulatory inspections. *Dow Chemical*, 476 U.S. at 237-38; *Donovan*, 452 U.S. at 598-99.

In *Donovan*, the Supreme Court held that warrantless administrative searches of stone quarries pursuant to the Federal Mine and Safety and Health Act of 1977 are constitutionally permissible and do not violate the Fourth Amendment. *Donovan* holds that a federal legislative scheme authorizing warrantless inspections of closely regulated industries does not violate the Fourth Amendment if three requirements are met: (1) there is a substantial government interest underlying the regulatory scheme pursuant to which the search is made; (2) the warrantless inspections are necessary to further the federal regulatory scheme; and (3) the statute's inspection program, in terms of the certainty and regularity of its application, provides an adequate substitute for the requirement of a search warrant. *Term Auto Sales*, 1995 WL 308988, at * 3. With regard to the third requirement, certainty and regularity are shown when adequate notice is provided and individual discretion by searching government employees is curtailed. Consistent with these requirements, the federal statute or regulation authorizing the inspection must contain time, place, and scope

49

limitations.  *Donovan*, 452 U.S. 594; *see also Burger*, 482 U.S. at 703; *Term Auto Sales*, 1995 WL 308988, at * 3.

"Congress has broad authority to regulate commercial enterprises engaged in or affecting interstate commerce, and an inspection program may in some cases be a necessary component of federal regulation."  *Donovan*, 452 U.S. at 599.  The Fourth Amendment protects the interests of owners of commercial property in being free from unreasonable searches or intrusions onto their business property by agents of the federal government.  Warrantless inspections of commercial property may be unreasonable searches under the  Fourth Amendment if they are not authorized by law or are unnecessary for the furtherance of the interests of the United States.  Similarly, federal government inspections of commercial property may be unreasonable "if their occurrence is so random, infrequent, or unpredictable that the owner, for all practical purposes, has no real expectation that his property will from time to time be inspected by government officials."  *Id*.  The Fourth Amendment applies where Congress has made no rules or regulations governing the procedures that federal inspectors must follow.  In such cases, a search warrant may be necessary under the Fourth Amendment to protect owners of commercial property from the "unbridled discretion" of federal executive and administrative officers.  *Id*. (quoting *Marshall*, 436 U.S. at 323).

*Donovan* goes on to explain that the assurance of regularity provided by a search warrant for commercial premises may be unnecessary under certain federal regulatory inspection schemes.  For example, the alcoholic beverage industry is subject to close inspection and supervision by the federal government, and Congress has broad power to design such powers of inspection that it deems necessary to carry out the regulatory scheme.  *Donovan*, 452 U.S. at 599-600 (citing *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 76-77 (1970)).

Another example cited in *Donovan* is *United States v. Biswell*, 406 U.S. 311 (1972), where

the Supreme Court held that the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.,* provided a

sufficiently comprehensive and predictable inspection scheme that warrantless inspections mandated

by the federal statutes did not violate the Fourth Amendment. Warrantless federal inspections for

compliance with the Gun Control Act pose only limited threats to the justifiable expectations of

privacy of firearms dealers. When a firearms dealer chooses to engage in this business which is

pervasively regulated by the United States government, the dealer does so with the knowledge that

his business records, firearms, and ammunition will be subject to effective inspections. The firearms

dealer is not left to wonder about the purposes of the federal inspectors and the limits of the

inspectors' regulatory task. *Donovan*, 452 U.S. at 600 (citing *Biswell*, 406 U.S. at 316).

> These decisions [*Colonnade Catering* and *Biswell*] make clear that a
> warrant may not be constitutionally required [by the Fourth Amend-
> ment] when Congress has reasonably determined that warrantless
> searches are necessary to further a regulatory scheme and the federal
> regulatory presence is sufficiently comprehensive and defined that
> the owner of commercial property cannot help but be aware that his
> property will be subject to periodic inspections undertaken for specific
> purposes.

*Donovan*, 452 U.S. at 600.

Plaintiff Moher's reliance on *Donovan*, 452 U.S. 594, and this line of precedent concerning

the Fourth Amendment's application to warrantless inspections of business premises and commercial

property by federal employees to enforce a regulatory scheme is misplaced. *Donovan* is inapposite

here. When the border patrol officers entered onto Moher's land on Sugar Island, they were not there

to inspect a business operation or industrial facility to regulate any commercial activity by Moher.

Rather, the federal officers entered onto Moher's land solely for the purpose of patrolling for illegal

immigration activity in open fields as authorized by 8 U.S.C. § 1357(a)(3).

Moher cannot use *Donovan* to avoid or circumvent the *Oliver* open fields doctrine in the

present case. *Donovan* did not involve a fact situation where federal officers were searching in open

fields. The majority opinion in *Donovan* did not take the open fields doctrine into consideration. *Donovan* was decided in 1981, three years before *Oliver*, 466 U.S. 170.

Moher's complaint does not allege that the border patrol officers sought to inspect or search inside any closed commercial buildings, structures, or storage units on Moher's timber land on Sugar Island which might constitute a search protected under the Fourth Amendment. There is no allegation by Moher that his timber land had any commercial buildings, structures, or closed storage units that the border patrol officer were attempting to search for illegal immigration activity. Instead, the federal officers were only on patrol on Sugar Island in open fields. Based on these facts and circumstances, this Court must follow *Oliver*, 466 U.S. 170 and apply the open fields doctrine. *Dow Chemical*, 476 U.S. at 237-38, and *Donovan*, 452 U.S. at 598-99 are not applicable here and do not take precedence over the open fields doctrine in *Oliver*, 466 U.S. 170.

In rejecting Moher's Fourth Amendment argument concerning searches of commercial property, this Court is guided by *Rapanos*, 115 F.3d at 372-73. In *Rapanos*, the Sixth Circuit discussed *Dow Chemical*, 476 U.S. 227, and rejected the argument that the open fields doctrine cannot be applied to a search of private commercial property or land that has been developed for commercial activity.

Even if we assume *arguendo* that *Donovan* has some application to the case at bar, the warrantless search of Moher's land on Sugar Island does not violate the Fourth Amendment because it is explicitly authorized by 8 U.S.C. § 1357(a)(3) and is reasonable. The United States has a compelling interest in patrolling its external borders to detect and prevent illegal immigration activity, and to enforce federal immigration laws. The Constitution allocates the responsibility for policing and safeguarding international borders to the United States government. Article I, Section 8, Clauses 3 and 4 of the Constitution provide that Congress shall have the power to regulate

52

commerce with foreign nations and establish uniform laws of naturalization. While the power of Congress to control who and what enters into the United States across international borders is explicitly declared in the Constitution itself, this power antedates the adoption of the Constitution and is based on the inherent sovereign authority of the United States to protect and preserve its territorial integrity. *Torres v. Puerto Rico*, 442 U.S. 465, 472-73 (1979); *United States v. Ramsey*, 431 U.S. 606, 616-20 (1977); *Denson v. United States*, 574 F.3d 1318, 1345 (11th Cir. 2009).

The Secretary of the Department of Homeland Security is charged with the duty to administer and enforce the federal laws relating to the immigration of aliens. 8 U.S.C. § 1103. Congress has enacted a comprehensive regulatory scheme for controlling the immigration of aliens into the United States and the removal of illegal aliens. Title 8 United States Code. The federal regulatory presence with regard to patrolling the international borders of the United States for illegal immigration activity is sufficiently comprehensive, pervasive, and well defined in federal law that Moher and other similarly situated owners of private land or commercial property within 25 miles of the international border between the United States and Canada cannot help but be aware that their land will be subject to occasional warrantless searches by federal border patrol officers.

Congress has reasonably determined that warrantless searches in open fields on private land located within 25 miles of the external borders of the United States are necessary to effectively carry out and enforce the federal regulatory scheme. It is reasonable under the Fourth Amendment for Congress to authorize federal officers to have access to private lands, but not homes or dwellings, within a distance of 25 miles from the external borders of the United States to conduct warrantless searches and patrol in open fields to prevent the illegal entry of aliens. In sum, the warrantless search of Moher's timber land on Sugar Island border patrol officers pursuant to 8 U.S.C. § 1357(a)(3) is reasonable and does not violate the Fourth Amendment, and is consistent with the warrantless search

principles set forth in *Donovan.*

Next, Moher cites *Allinder v. State of Ohio*, 808 F.2d 1180 (6th Cir. 1987) for the same proposition that inspections and searches of commercial property and business facilities by government regulators without a search warrant may be unreasonable and violate the Fourth Amendment. Moher does not analyze *Allinder* and explain how it may apply to the present case.

The Court concludes that *Allinder* is inapposite. Moher's case is readily distinguishable from *Allinder* which was decided by the Sixth Circuit after *Oliver*, 466 U.S. 170. In *Allinder*, an Ohio statute empowered the Ohio Director of Agriculture or his authorized representatives to conduct warrantless searches and inspections of apiaries and other premises, buildings, or places where bees or bee paraphernalia are kept. After the Ohio Director of Agriculture gave notice of a planned warrantless inspection of their apiaries, the plaintiff beekeepers commenced civil actions in federal district court against defendants State of Ohio, the Ohio Department of Agriculture, the Director of the Ohio Department of Agriculture, and the Bee Inspector of Hardin County, Ohio seeking a declaratory judgment and injunctive relief. The plaintiffs were commercial beekeepers engaged in the business of raising bees for honey production and renting bees to farmers for crop pollination.

The federal district court granted the plaintiffs' motion for partial summary judgment and permanently enjoined the Ohio Department of Agriculture from conducting warrantless, non-consensual inspections of bee apiaries pursuant to the Ohio statute on the ground that the statute was unconstitutional and violated the Fourth Amendment. The defendants in *Allinder* took an appeal to the Sixth Circuit. The Sixth Circuit affirmed the judgment in part, reversed in part, and remanded the case to the district court for further proceedings. The Sixth Circuit declined to extend the *Oliver* open fields doctrine to warrantless searches and inspections of closed commercial structures and containers such as beehives. *Allinder*, 808 F.2d at 1184-86.

Moher's case is distinguishable from *Allinder*.  In the present case, there is no search protected under the Fourth Amendment because the federal border patrol officers did not seek to enter into and search inside any closed commercial buildings, structures, or storage units on Moher's land on Sugar Island that fall outside the proper scope of the *Oliver* open fields doctrine.  Unlike the fact situation in *Allinder*, there is no allegation here by Moher that the border patrol officers planned or attempted to search inside any closed commercial buildings, structures, or storage units on Moher's land that were not open fields.  As the Court reads the facts alleged in Moher's second amended complaint, the federal officers were on patrol for illegal immigration activity in open fields on Sugar Island.  Such conduct simply does not rise to the level of a search protected by the Fourth Amendment.  In Moher's case, this Court must follow *Oliver*, 466 U.S. 170, and its progeny by applying the open fields doctrine.  *Allinder* does not lead this Court to reach a different opinion.

## VII.  Plaintiff's Objection to Footnote in Magistrate Judge's Report and Recommendation

On the last page of the report and recommendation, the Magistrate Judge makes the following comment in footnote 1:

> The undersigned does not condone plaintiff's behavior nor the behavior of the Homeland Security officers, *as alleged*.  The officers were properly patrolling the area and, in my opinion, had the right to access plaintiff's property to perform their duties.  Plaintiff reacted foolishly.  There remains a question of fact as to whether the officers also reacted foolishly. (Emphasis in original).

[Court Doc. No. 15, p. 6 n. 1].

Moher objects to this footnote as being unnecessary, inappropriate, and prejudicial.  He cites Canons 2 and 3 of the Code of Conduct for United States Judges for the proposition that Magistrate Judges are obligated to act impartially in the performance of their judicial duties.  Moher contends that the footnote, critical of his conduct, shows bias against him and violates the Code of Conduct for federal judges.  Moher requests that the footnote be withdrawn from the report and

recommendation, and stricken from the record.  [Court Doc. No. 16, p. 2].

This objection is without merit.  Moher's request that the footnote in the report and recommendation be withdrawn and stricken from the record is DENIED.  When the Magistrate Judge makes the innocuous comment that Moher "reacted foolishly" by confronting the border patrol officers, this does not amount to an expression of any personal bias against Moher that violates Canons 2 and 3 of the Code of Conduct for United States Judges.  To express the viewpoint that Moher "reacted foolishly" is not an overly harsh personal attack against Moher and does not impugn his character.  Rather, the footnote is merely a fair comment by the Magistrate Judge concerning his opinion of Moher's conduct.  The Magistrate Judge has the authority and reasonable latitude to express such an opinion concerning Moher's conduct and the footnote does not cause any harm or actual prejudice to Moher's case.

## VIII.  <u>Conclusion</u>

The objections by plaintiff Moher and defendant United States to the Magistrate Judge's report and recommendation [Court Doc . Nos. 16, 17] are **DENIED**.  For the reasons expressed in this memorandum and order, the Court **ACCEPTS** the Magistrate Judge's report and recommendation pursuant to 28 U.S.C. § 636(b)(1).

The motion by plaintiff Moher for leave to file a second amended complaint [Court Doc. No. 9] is **GRANTED** pursuant to Fed. R. Civ. P. 15(a)(2).  The Clerk of Court is directed to file and docket the plaintiff's second amended complaint.

The defendant's motion to dismiss the second amended complaint [Court Doc. No. 6] is **GRANTED IN PART and DENIED IN PART** as follows.  The motion is **GRANTED IN PART** to the extent that: (1) plaintiff Moher's trespass claim brought under the FTCA in Count I of the amended complaint is **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6); and

(2) the entire Count II of the second amended complaint seeking a declaratory judgment under 28

U.S.C. § 2201 is **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

The defendant's motion to dismiss the plaintiff's second amended complaint [Court Doc. No.

6] is **DENIED IN PART** with regard to the plaintiff's tort claims for assault and battery brought

under the FTCA.  Plaintiff Moher may proceed with his assault and battery claims under the FTCA.

SO ORDERED.

Date: 6/8/2012


_____ */s/ R. Allan Edgar* _____

R. ALLAN EDGAR

UNITED STATES DISTRICT JUDGE